Mary Jo Heston
Lane Powell PC
1420 Fifth Ave., Suite 4200
Seattle, WA 98111-9402
(206) 223-7000
(206) 223-7101 Facsimile
Attorneys for Sears Holdings Corporation

HONORABLE CHRISTOPHER M. ALSTON

CHAPTER 7

# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| In re:<br>MICHAEL A. CALOGRIDIS,<br><br>         Debtor. | Case No. 16-12073-CMA |
| SEARS HOLDINGS CORPORATION,<br>         Plaintiff,<br>v.<br>MICHAEL A. CALOGRIDIS,<br>         Defendant. | Adversary No.<br><br>COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT |

    The plaintiff in this action, Sears Holdings Corporation ("Sears"), by counsel, pursuant to the provisions of 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) and Fed. R. Bankr. P. 4007 and 7001, requests that the Court determine certain obligations of Michael A. Calogridis ("Defendant") to Sears to be nondischargeable. In support of its Complaint, Sears states as follows:

COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT - 1
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA   Doc 1   Filed 07/13/16   Ent. 07/13/16 16:23:55   Pg. 1 of 16

## BACKGROUND

1. On April 20, 2016 (the "Petition Date"), Defendant filed in the Western District of Washington a Petition for Relief under Chapter 7 of the United States Bankruptcy Code, Case No. 16-12073-CMA.

2. Defendant listed his address in a written filing with this Court as 5615 24th Avenue NW, Unit 24, Seattle, Washington 98107.

3. All the acts or omissions alleged to have been taken by Defendant herein were undertaken for his individual benefit. Defendant is a guarantor of the indebtedness at issue herein.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this matter constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409(a).

## NATURE OF ACTION

5. Sears seeks a determination of nondischargeability with respect to Defendant's liability to Sears relating to breaches of Defendant's (1) employment letter agreement of May 10, 2013 (the "Letter Agreement"); and (2) Relocation Repayment Agreement (the "RRA").

6. The obligations breached by Defendant were triggered by his fraudulent acts and omissions and his intentional and willful malicious acts directed toward Sears.

7. Less than two months after Defendant commenced working for Sears as its Senior Vice President, Strategic Pricing and Promotions (the "SVP Position"), Sears found out that Defendant had (1) deliberately misrepresented his qualifications and prior work experience, and (2) lied to Sears employees during the process of interviewing for the SVP Position.

8. On August 8, 2013, following Sears' investigation into Defendant's misrepresentations and lies, Sears terminated Defendant for cause, including for willful misconduct and integrity issues. Pursuant to the plain language of the Letter Agreement and

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT - 2
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA    Doc 1    Filed 07/13/16    Ent. 07/13/16 16:23:55    Pg. 2 of 16

RRA, Sears subsequently sought reimbursement from Defendant of $71,034.51 in signing bonus payments (the "Sign-on Bonus") and $52,193.50 in relocation expenses (the "Relocation Expenses") paid to Defendant.

9. Defendant refused to repay the Sign-on Bonus and Relocation Expenses to Sears.

10. On October 15, 2013, Sears filed suit against Defendant in the United States District Court for the Northern District of Illinois, case number 1:13-cv-07392 (the "Litigation").

11. As of Defendant's Petition Date, the Litigation is ongoing but stayed pending resolution of Defendant's Petition.

## ALLEGATIONS COMMON TO ALL COUNTS

12. On or about January 13, 2013, Defendant formally began the interview process for the SVP Position with Sears (the "Interview Process").

13. The Interview Process proceeded until early May 2013.

14. On May 10, 2013, Sears tendered to Defendant the Letter Agreement, whereby Sears offered Defendant employment in the SVP Position. A true and correct copy of the Letter Agreement is attached hereto and incorporated by reference herein as **Exhibit A**.

15. The Letter Agreement set forth the SVP Position and key elements of Defendant's compensation package, and stated that Sears' offer was "subject to the contingencies listed" in the Letter Agreement.

16. As part of Defendant's compensation package, the Letter Agreement provided for the Sign-on Bonus.

17. With regard to the Sign-on Bonus, the Letter Agreement also stated that, *inter alia*:

> In the event you voluntarily terminate your employment with [Sears] or are terminated by [Sears] for misconduct or integrity issues within twenty-four (24) months of

COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT - 3
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA    Doc 1    Filed 07/13/16    Ent. 07/13/16 16:23:55    Pg. 3 of 16

> your start date, you will be required to repay the full amount of the payment paid to you, including any taxes withheld, unless prohibited by law, to [Sears] within thirty (30) days of your last day worked.

(Letter Agreement at 1.)

18. Defendant accepted Sears' offer of employment in the SVP Position by executing the Letter Agreement on May 13, 2013. (Letter Agreement at 3.)

19. Pursuant to the SVP Position, Defendant—who resided in Seattle, Washington—would be required to work at Sears' corporate headquarters in Hoffman Estates, Illinois.

20. Defendant and Sears also negotiated for Sears to cover certain of Defendant's costs associated with relocating from Washington to Illinois.

21. Pursuant thereto, Sears and Defendant entered into the RRA on May 19, 2013. A true and correct copy of the RRA is attached hereto and incorporated by reference herein as **Exhibit B**.

22. The RRA provided that Sears would pay Defendant the Relocation Expenses subject to certain conditions. Specifically, as part of the RRA, Defendant acknowledged that, *inter alia*:

> Should [he] withdraw from the offered relocation, or should [he] voluntarily resign or be involuntarily terminated for misconduct or integrity, [he] will reimburse [Sears] . . . for the <u>full amount of</u> all payments provided to [him] or paid on [his] behalf under [the RRA], including any taxes withheld or any tax gross-up, unless prohibited by law:
>
> 100% reimbursement – if [his] withdrawal / resignation / termination is within the first 24 months from the date [he] sign[s] this [RRA].

(RRA at ¶ 2 (emphasis in original).)

23. Pursuant to the RRA, Sears commenced payment of the Relocation Expenses

COMPLAINT TO DETERMINE DISCHARGEABILITY
OF DEBT - 4
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA    Doc 1    Filed 07/13/16    Ent. 07/13/16 16:23:55    Pg. 4 of 16

to Defendant on May 22, 2013.

24. Pursuant to the executed Letter Agreement, Defendant commenced working for Sears, at Sears' Illinois headquarters, in the SVP Position on June 3, 2013.

25. Pursuant to the executed Letter Agreement, Defendant's Sign-on Bonus was paid by Sears as part of Defendant's compensation for the payment period of June 16, 2013 through June 30, 2013.

26. On July 22, 2013, Sears received an anonymous e-mail alerting it to the fact that Defendant's purported prior work experience had been materially misrepresented, and detailing the bases for the allegation.

27. Sears subsequently commenced an investigation into the veracity of Defendant's purported prior work experience, as represented to Sears by Defendant.

28. Sears' investigation was thorough, and included two discussions with Defendant himself.

29. At the conclusion of Defendant's final investigatory interview with Sears, Defendant fled Sears' offices and went to the airport despite having other scheduled meetings at Sears' offices.

30. Based on its investigation, Sears determined that Defendant made several intentional and material misrepresentations as part of the application process. These misrepresentations included, but were not limited to:

    a. Defendant's prior compensation;

    b. Defendant's prior job title;

    c. Defendant's prior job description and responsibilities;

    d. Defendant's prior client base;

    e. Defendant's prior colleagues; and

    f. Defendant's previous employer's office locations.

31. Based on its investigation into Defendant's willful misconduct in the process of

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT - 5
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA    Doc 1    Filed 07/13/16    Ent. 07/13/16 16:23:55    Pg. 5 of 16

applying for the SVP Position, Sears terminated Defendant's employment on August 8, 2013.

32. Specifically, Defendant's employment was terminated for cause, including for willful misconduct and integrity issues.

33. On October 9, 2013, Sears sent Defendant a letter (the "Repayment Letter") notifying Defendant of his obligation to repay the Sign-on Bonus and Relocation Expenses. A true and correct copy of the Repayment Letter is attached hereto and incorporated by reference herein as **Exhibit C**.

34. On October 9, 2013, Defendant responded, informing Sears that he would not be repaying the Sign-on Bonus and Relocation expenses.

## COUNT I—MONEY OBTAINED THROUGH FALSE PRETENSES, A FALSE REPRESENTATION, OR ACTUAL FRAUD (11 U.S.C. § 523(a)(2)(A))

35. Sears realleges and incorporates by reference the allegations contained in paragraphs 1 through 34, the same as if repeated verbatim herein.

36. Defendant materially misrepresented his prior work experience and compensation as part of his application process for the SVP Position with Sears.

37. Throughout the entirety of his application process for the SVP Position, and his subsequent employment with Sears, Defendant had full knowledge of the falsity of his misrepresentations as to his prior work experience and compensation.

38. Defendant intentionally misrepresented his prior work experience and compensation for the purpose of deceiving Sears and inducing Sears into hiring him for the SVP Position.

39. Defendant's misrepresentations as to his prior work experience and compensation were material to Sears' decision to hire him.

40. Sears was justified in relying on Defendant's misrepresentations as to his prior work experience and compensation in making its decision to hire Defendant.

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT - 6
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA    Doc 1    Filed 07/13/16    Ent. 07/13/16 16:23:55    Pg. 6 of 16

41. Defendant intentionally misrepresented his prior work experience and compensation for the purpose of deceiving Sears and inducing Sears to compensate Defendant commensurate with the prior experience and compensation he misrepresented, including Defendant's base salary, Sign-on Bonus, and Relocation Expenses.

42. Defendant's misrepresentations as to his prior work experience and compensation were material to Sears' decision as to Defendant's base salary, decision to award (and the amount of) the Sign-on Bonus, and decision to award the Relocation Expenses.

43. Sears was justified in relying on Defendant's misrepresentations as to his prior work experience and compensation in making its decision to award the Defendant the Sign-on Bonus and the Relocation Expenses.

44. Defendant's intentional and material misrepresentations procured for him the Sign-on Bonus and Relocation Expenses that are the subject of the Litigation.

45. Defendant entered into the Letter Agreement and the RRA with full knowledge that his misrepresentations as to his prior work experience and compensation could subject him to termination for cause by Sears resulting in obligations to repay part or all of the Sign-on Bonus and Relocation Expenses.

46. Defendant's intentional and material misrepresentations triggered his termination for cause, including for willful misconduct and integrity issues, which triggered his obligation to repay the Sign-on Bonus and Relocation Expenses.

47. As of the Petition Date, the total unpaid indebtedness on Defendant's fraudulently-obtained Sign-on Bonus—excluding interest, fees, and other costs, is $71,034.51.

48. As of the Petition Date, the total unpaid indebtedness on Defendant's fraudulently-obtained Relocation Expenses—excluding interest, fees, and other costs, is $52,193.50.

49. Pursuant to the relevant agreements with Defendant, Sears is also entitled to recover its attorneys' fees and costs incurred pursuant to its efforts to recover the fraudulently

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT - 7
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA    Doc 1    Filed 07/13/16    Ent. 07/13/16 16:23:55    Pg. 7 of 16

procured Sign-on Bonus and Relocation Expenses.

50. As of the Petition Date, the aggregate unpaid amount of the fraudulently-obtained Sign-on Bonus and Relocation Expenses is one hundred and twenty-three thousand, two hundred and twenty-eight and 01/100 dollars ($123,228.01)—exclusive of attorneys' fees and costs—which represents Sears' actual damages.

51. The sum of one hundred and twenty-three thousand, two hundred and twenty-eight and 01/100 dollars ($123,228.01)—plus attorney's fees and costs—therefore is non-dischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) as Sears' actual damages under this Count.

### COUNT II—WILLFUL AND MALICIOUS INJURY
### (11 U.S.C. § 523(a)(6))

52. Sears realleges and incorporates by reference the allegations contained in paragraphs 1 through 51, the same as if repeated verbatim herein.

53. Defendant's conduct described above rises to the level of intentional monetary injury to Sears.

54. Defendant deliberately and intentionally made material misrepresentations to Sears regarding his prior work experience and compensation.

55. Defendant was substantially certain that such deliberate and intentional misrepresentations to Sears would cause Sears to hire him in the SVP Position, and over-compensate him with salary, Sign On Bonus, and Relocation Expenses.

56. Defendant's falsification of his prior work experience and compensation for the purpose of deceiving Sears and inducing Sears to hire him for the SVP Position was wrongful.

57. Defendant intentionally misrepresented his prior work experience and compensation for the purpose of deceiving Sears and inducing Sears to hire him for the SVP Position.

58. Defendant intentionally misrepresented his prior work experience and compensation necessarily caused Sears to pay Defendant a salary, Sign On Bonus, and Relocation Expenses.

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT - 8
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA    Doc 1    Filed 07/13/16    Ent. 07/13/16 16:23:55    Pg. 8 of 16

59. Defendant had no just cause or excuse for misrepresenting his prior work experience and compensation.

60. Defendant is thus liable to Sears for willful and malicious injury within the meaning of 11 U.S.C. § 523(a)(6).

61. The sum of one hundred and twenty-three thousand, two hundred and twenty-eight and 01/100 dollars ($123,228.01)—plus attorneys' fees and costs—therefore constitutes a nondischargeable debt of Defendant to Sears, as Sears' actual damages relating to Defendant's actions.

**WHEREFORE**, plaintiff Sears Holdings Corporation respectfully requests that the Court enter judgment as follows: (i) declaring a portion of the debt owed by Michael A. Calogridis to be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6); (ii) awarding Sears Holdings Corporation a judgment against Defendant Michael A. Calogridis in an amount not less than one hundred and twenty-three thousand, two hundred and twenty-eight and 01/100 dollars ($123,228.01), plus post-judgment interest, costs, and attorneys' fees; and (iii) awarding Sears Holdings Corporation its attorneys' fees and costs incurred in bringing this adversary proceeding, and such other and further relief as the Court may deem just and proper.

Respectfully submitted this 13th day of July, 2016.

LANE POWELL PC

By /s/ Mary Jo Heston
Mary Jo Heston, WSBA No. 11065
Attorney for Sears Holdings Corporation

COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT - 9
999999.0020/6717273.1
CHICAGO/#2864801.1

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Case 16-01172-CMA    Doc 1    Filed 07/13/16    Ent. 07/13/16 16:23:55    Pg. 9 of 16

# SEARS HOLDINGS

Dean Carter
Chief Human Resources Officer

May 10, 2013

Sears Holdings Management Corporation
3333 Beverly Road B6-169B
Hoffman Estates, IL 60179
PH: 847-286-1548
Email: dean.carter@searshc.com

Mr. Michael Calogridis
5615 24th Avenue Northwest
Unit 24
Seattle, WA 98107

Dear Mike,

We are pleased to extend to you our offer to join Sears Holdings Corporation ("SHC") as Senior Vice President, Strategic Pricing and Promotions, reporting to Imran Jooma, Executive Vice President and President – Online, Marketing, Pricing and Financial Services. Your start date is to be determined. This letter serves as confirmation of our offer, subject to the contingencies listed below. Please note that the offer also is subject to the approval of the Compensation Committee of SHC's Board of Directors ("Compensation Committee").

The key elements of your compensation package are as follows:

- Annual base salary at a rate of $400,000.

- Participation in the Sears Holdings Corporation Annual Incentive Plan ("AIP") with an annual incentive opportunity of 75% of your base salary. Your target incentive under the 2013 AIP will be prorated from your start date through February 1, 2014, the last day of SHC's 2013 fiscal year. Any incentive payable with respect to a fiscal year will be paid by April 15th of the following fiscal year, provided that you are actively employed at the payment date. Further details regarding your 2013 AIP target award will be provided to you following your start date.

- Participation in the SHC long-term incentive program ("LTI"). Your target incentive opportunity under the LTI will be 100% of your base salary. Your participation in SHC's 2013 LTI will be prorated from your start date through January 30, 2016, the last day of SHC's 2015 fiscal year. Further details regarding your 2013 LTI target award will be provided to you following your start date.

- You will receive a one-time sign-on bonus of $75,000 (gross). This sign-on bonus will be payable within thirty (30) days following your start date. In the event you voluntarily terminate your employment with SHC or are terminated by SHC for misconduct or integrity issues within twenty-four (24) months of your start date, you will be required to repay the full amount of the payment paid to you, including any taxes withheld, unless prohibited by law, to SHC within thirty (30) days of your last day worked.

- You will be eligible to receive a long-term incentive cash award of $250,000. This award will be scheduled to vest on a graded basis, with one-half of the award vesting as of each of the first and second anniversaries of your start date, provided you are actively employed on the applicable vesting date, and will be payable as soon as administratively possible following the applicable vesting date.

Mr. Michael Calogridis
May 10, 2013
Page 2

- You represent and warrant to SHC that (a) as of your start date with SHC, you are not subject to any obligation, written or oral, containing any non-competition provision or any other restriction (including, without limitation, any confidentiality provision) that would result in any restriction on your ability to accept and perform this or any other position with SHC or any of its affiliates and (b) you are not (i) a member of any board of directors, board of trustees or similar governing body of any for-profit, non-profit or not-for-profit entity, or (ii) a party to any agreement, written or oral, with any entity under which you would receive remuneration for your services, except as disclosed to and approved by SHC in advance of your start date. You agree that you will not (A) become a member of any board or body described in clause (b)(i) of the preceding sentence or (B) become a party to any agreement described in clause (b)(ii) of the preceding sentence, in each case without the prior written consent of SHC, such consent not to be unreasonably withheld. Further, you agree you will not disclose or use, in violation of an obligation of confidentiality, any information that you acquired as a result of any previous employment or otherwise.

- You will be required to sign an Executive Severance Agreement ("Agreement"). If your employment with SHC is terminated by SHC (other than for Cause, death or Disability) or by you for Good Reason (as such capitalized terms are defined in the Agreement), you will receive twelve (12) months of salary continuation, equal to your base salary at the time of termination, subject to mitigation. Under the Agreement, you agree, among other things, not to disclose confidential information and for twelve (12) months following termination of employment not to solicit employees. You also agree not to aid, assist or render services for any "Sears Competitor" or "Sears Vendor" (as such terms are defined in the Agreement) for twelve (12) months following termination of employment. The non-disclosure, non-solicitation, non-compete and non-affiliation provisions apply regardless of whether you are eligible for severance benefits under this Agreement. This offer is contingent upon you signing this Agreement.

- You will be eligible for relocation assistance in accordance with company's standard relocation policy. To receive relocation assistance, you must sign a Relocation Repayment Agreement which will be included in the Relocation Benefits package that will be sent to you from the company's relocation vendor. Your relocation package will include home sale assistance and moving and storage of household goods. In addition you will receive a one-time lump sum payment of $40,000 (net) when you initiate your relocation package, to assist with temporary living and travel during the relocation process. A sample copy of the Relocation Repayment Agreement is enclosed for your information.

- You will be eligible to receive four (4) weeks paid vacation, which will be pro-rated during your first year of service based on your start date. Added to this, you will qualify for six (6) paid National Holidays each year. You also will be eligible for up to four (4) personal days per year, after completing six (6) months of service.

- You will be eligible to participate in all retirement, health and welfare programs on a basis no less favorable than other executives at your level, in accordance with the applicable terms, conditions and availability of those programs.

- This offer also is contingent upon satisfactory completion of a background reference check, employment authorization verification and pre-employment drug test.

Mr. Michael Calogridis
May 10, 2013
Page 3

Mike, we are looking forward to you joining Sears Holdings Corporation. We are excited about the important contributions you will make to the company and look forward to your acceptance of our offer. If you need additional information or clarification, please call.

This offer will expire if not accepted within one week from the date of this letter. To accept, sign below and return this letter along with your signed Executive Severance Agreement to my attention.

Sincerely,

*[signature]*

Dean Carter

Enclosures

Accepted:

_Michael Calogridis_ _____      _5/13/13_
Michael Calogridis                    Date

## RELOCATION REPAYMENT AGREEMENT

In consideration for the relocation expenses associated with my relocation that are paid by Sears Holdings Corporation's relocation services provider and/or Sears Holdings Corporation (collectively "the Company") either directly to me, or on my behalf, I acknowledge and agree to the terms of this Relocation Repayment Agreement ("Agreement") outlined below:

I understand and agree that:

1. The Company will withhold and report on my W-2 all applicable taxes on my relocation expenses. It is my responsibility to maintain all receipts for my relocation expenses in order to take the allowable deductions on my tax return.

2. Should I withdraw from the offered relocation, or should I voluntarily resign or be involuntarily terminated for misconduct or integrity, I will reimburse the Company, as specified below, for the full amount of all payments provided to me or paid on my behalf under this Agreement, including any taxes withheld or any tax gross-up, unless prohibited by law:

   - **100% reimbursement** - if my withdrawal/resignation/termination is within the first 24 months from the date I sign this Agreement.

3. I authorize the Company to make deductions from my final paycheck to satisfy my reimbursement obligation as set forth in Paragraph 2, unless prohibited by law. If such deductions are not sufficient to reimburse the Company, I agree to pay the Company the remaining balance on my last day of employment. If I fail to fulfill the reimbursement obligation, I will be liable for all costs and attorney fees incurred by the Company in connection with the collection of my relocation expenses.

4. My relocation expenses will not be processed unless I sign this Agreement.

5. This Agreement will be governed by the laws of the State of Illinois without regard to its choice of law provisions.

Sears Holdings Corporation and its subsidiary companies reserve the right to interpret, change, or terminate compensation programs at its sole discretion and at any time. This Agreement is not intended to be a contract of employment. Employment with the Company is at-will, which means I have the right to leave employment at any time and for any reason and the Company reserves the right to terminate associates on the same basis, with or without cause and with or without notice.

**ACKNOWLEDGMENT**

I acknowledge that I have read and understand, and I affirm my agreement to comply with, this Relocation Repayment Agreement.

Acknowledged and Agreed by:

_Michael Calogridis_  5/19/13
Signature                    Date

MICHAEL CALOGRIDIS
Print Name

**RETURN SIGNED FORM TO YOUR CARTUS CLIENT SERVICES CONSULTANT**

Sears Holdings HR Support Center
P.O. Box 2400
Omaha, NE 68103-2400
(888) 887-3277

VIA REGULAR MAIL AND E-MAIL (MIKECALOGRIDIS@COMCAST.NET)

October 9, 2013

MICHAEL CALOGRIDIS,
5615 24th Avenue Northwest Unit 24
Seattle, WA 98107

**Re: Relocation and Sign-On Bonus Repayment**

Dear Mr. Calogridis:

Our records indicate you received a relocation package in the amount of $60,193.50. In accordance with provisions of the Relocation Repayment Agreement you executed, you are responsible for paying the remaining balance of $52,193.50 . In addition, you received a sign-on bonus for the amount of $71,034.51. Therefore, the total amount due and owing to Sears Holdings is $123,228.01. Attached you will find a worksheet detailing the funds you were paid.

Please send a check or money order payable to Sears Holdings Corporation for $123,228.01 within 5 business days. To ensure proper handling, write your Employee ID (41023939844) and Case # 1921753321/1921752944 on the check. Please send to:

| For FedEx/UPS/Overnight Packages | For USPS/Certified Mail |
|---|---|
| Sears HR- Payroll Tax and Finance 2400 | Sears HR- Payroll Tax and Finance |
| Attention: OVERPAYMENTS | Attention: OVERPAYMENTS |
| 4528 F Street | PO Box 2400 |
| Omaha, NE 68117 | Omaha, NE 68103-2400 |

If you have questions, please call our HR Support center at (888) 887-3277 and reference Case Number 1921753321/1921752944.

**This letter is an attempt to collect a debt. Any information provided will be used for that purpose.**

Thank you for your prompt attention to this matter.

Cathie Bojanowski

CALOGRIDIS,MICHAEL  41023939844  Case #: 1921753321/1921752944

**Ex. C, pg 1 of 3**

Name: **CALOGRIDIS,MICHAEL**
Emplid: 41023939844
Case #: 1921753321/1921752944

## Relocation Repayment Calculation:

### Earnings

| Earning Type | Correct Amount | Actual Amount |
|---|---|---|
| RGW- Subject to Wthldg & Gross Up | $0.00 | $61,192.43 |

| | |
|---|---|
| Total Earnings Should Have Been: | $0.00 |
| Total Earnings Paid Were: | $61,192.43 |
| Difference between Correct/Actual: | ($61,192.43) |

### Taxes

| Tax Type | Correct Amount | Actual Amount |
|---|---|---|
| Federal Withholding | $20,193.50 | $20,193.50 |
| Federal FICA Med Hospital Ins | $0.00 | $998.93 |

| | |
|---|---|
| Total Taxes Should Have Been: | $20,193.50 |
| Total Taxes Paid Were: | $21,192.43 |
| Difference between Correct/Actual: | ($998.93) |

### Deductions - None

Net Pay is calculated by taking the Earnings minus taxes and deductions. This is the amount directly received by you as a check or direct deposit

**$40,000.00 (Lump Sum Payment)**
**$20,193.50 (Tax Assistance)**

**$60,193.50 TOTAL**

### Payments/Credits

| Credit Date | Payment/Credit Type | Amount Credited |
|---|---|---|
| 10/04/2013 | Check Date: 8/23/2013 | $8,000.00 |

Name: CALOGRIDIS,MICHAEL
Emplid: 41023939844
Case #: 1921753321/1921752944

## Payment Calculation for Sign-On Bonus

### 6/16/2013 to 6/30/2013 Earnings

| Earning Type | Correct Amount | Actual Amount |
|---|---|---|
| 540- Start Bonus | $0.00 | $75,000.00 |

| | |
|---|---|
| Total Earnings Should Have Been: | $0.00 |
| Total Earnings Paid Were: | $75,000.00 |
| Difference between Correct/Actual: | ($75,000.00) |

## Taxes

| Tax Type | Correct Amount | Actual Amount |
|---|---|---|
| IL Withholding | $3,750.00 | $3,750.00 |
| Federal ithholding | $18,750.00 | $18,750.00 |
| Federal FICA Med Hospital Ins | $0.00 | $1,087.50 |
| Federal OASDI/Disability | $1,772.01 | $4,650.00 |

| | |
|---|---|
| Total Taxes Should Have Been: | $24,272.01 |
| Total Taxes Paid Were: | $28,237.50 |
| Difference between Correct/Actual: | ($3,965.49) |

## Deductions - None

Net Pay is calculated by taking the Earnings minus taxes and deductions. This is the amount directly received by you as a check or direct deposit

| Incorrect Net Pay | $46,762.50 | - Correct Net Pay | ($24,272.01) | + Deductions Paid on Your Behalf | $0.00 |
|---|---|---|---|---|---|
| | = TOTAL OWED FOR THIS PERIOD: | $71,034.51 | | | |